# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | |
|---|---|
| RICHARD A. PRESSL AND THERESA M. PRESSL,<br><br>*Plaintiffs,*<br><br>v.<br><br>APPALACHIAN POWER COMPANY<br><br>*Defendant.* | CASE NO. 7:15-CV-00343<br><br><br>MEMORANDUM OPINION<br><br><br>JUDGE NORMAN K. MOON |

Richard A. Pressl and Theresa M. Pressl ("Pressls," or "Plaintiffs") filed this action in state court, pursuant to Virginia Code, § 8.01–184. Appalachian Power Company ("APCO," or "Defendant") removed the action to this Court.

This action arises out of the Pressls' desire to construct a dock on Smith Mountain Lake. Compl. ¶ 6. The construction, APCO argues, is subject to both a flowage easement that APCO holds on the Pressls' property and a license order granted to APCO by the Federal Energy Regulatory Commission ("FERC"). Mot. to Dismiss 2. APCO claims these rights because it operates the Smith Mountain Hydroelectric Project on the Smith Mountain and Leesville Lakes in Southwest Virginia. *Id.* At the end of the Complaint, the Pressls asked the state court for the following forms of declaratory judgment:

> C. That the Court . . . find that APCO lacks the authority to demand that your plaintiffs relinquish without compensation valuable property rights they and their predecessors in title retained by under the original flowage easement.
>
> D. That the Court further find that APCO lacks the authority to require the plaintiffs to enter into a revocable license agreement as a condition for accessing the waters of Smith Mountain Lake for recreational purposes;

E.  That the Court find that APCO has no regulatory authority over the plaintiffs' property which lies below the 800 foot contour beyond those rights defined by the flowage easement, the contemporaneous expressions of the parties, and vested rights to build and own structures to access Smith Mountain Lake for recreational purposes;

F.  That the Court find that APCO cannot regulate the size and type of dock that the plaintiffs may construct on their property;

G.  That the Court find that APCO cannot regulate how the plaintiffs stabilize the shoreline of their property by requiring them to plant vegetation below the 800 foot contour;

H.  That the Court find that APCO cannot regulate whether the plaintiffs may dredge in front of their property to improve any dock which they may construct;

I.  That the Court find that the Plaintiffs be allowed to use their property in any manner not inconsistent with the maintenance of a dam and hydro-electric power generation plant operated by APCO.

Compl., pp. 18–19. The matter is now before me upon the Pressls' motion to remand and APCO's motion to dismiss. The Pressls argue that the entire case should be remanded to the Circuit Court for the County of Franklin, Virginia, under 28 U.S.C. § 1447(c) ("if at any time before final judgment it appears that the district court lacks subject matter jurisdiction"), because the Court lacks subject matter jurisdiction. APCO argues that the complaint should be dismissed because it fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the Pressls' motion will be **DENIED** and APCO's motion will be **GRANTED**.

## I.     BACKGROUND

APCO operates the Smith Mountain Hydroelectric Project ("the Project") pursuant to a license issued to it by the FERC. The Federal Power Act ("FPA"), 16 U.S.C. § 791a *et seq.*, vests FERC with the authority to license hydroelectric projects for the use and benefit of

– 2 –

interstate and foreign commerce. By an order dated April 25, 1960, FERC issued a fifty-year license to APCO for the Project, thus delegating its duties and responsibilities to APCO. FERC extended this license for an additional ten years by an order issued on December 15, 2009. The Project boundary encompasses the reservoir at Smith Mountain Lake and all lands on the shoreline of the lake lying below a specific elevation, 800 feet above mean sea level ("FMSL"). When FERC granted APCO the license, it required APCO to acquire title to or the right to use all property necessary to construct, maintain, and operate the Project. Accordingly, APCO has obtained property rights to all Project lands (those below 800 FMSL), and either owns them in fee or has obtained rights of occupancy and use via flowage right and easement deeds. According to APCO, these property rights allow it to enforce the requirements of the FERC license.

APCO manages the Project in accordance with a Shoreline Management Plan (the "SMP"), which it developed in 2003. The SMP has been incorporated by and is now a part of APCO's license from FERC. The SMP provides detailed guidelines for managing development within the Project's boundaries. Accordingly, the SMP imposes various restrictions aimed at promoting shoreline stabilization and the protection of aesthetic and environmental quality. Among other things, the regulations address the location, length, height, and maximum size of docks. The SMP further limits what can be constructed between an elevation of 795 and 800 FMSL. Structures located within this zone are limited to those that provide access to a dock, as well as pilings or cables installed for purposes of enhancing the stability of a floating structure.

The Pressls own a parcel of land on Smith Mountain Lake. Their property is located in Lakeland Park, Gills Creek Magisterial District, Franklin County, Virginia. The Pressls' property consists of 2.663 acres with ½ acre, more or less, below the Project boundary of 800

FMSL.  APCO had previously obtained easement rights over the Pressls' property pursuant to a Flowage Right and Easement Deed dated April 18, 1960, by and between APCO and the Pressls' predecessors-in-title.  The Flowage Right and Easement Deed provide APCO with:

> [T]he right to enter upon said premises at any time and from time to time and, at [APCO's] discretion, to cut, burn and/or remove therefrom any and all buildings, structures, improvements, trees, bushes, driftwood and other objects and debris of any and every kind or description which are or may hereafter be located on the portion of said premises below the contour the elevation [sic] of which is 800 feet.
>
> [Pressls have] the right to possess and use said premises [subject to the flowage easement] in any manner not inconsistent with the estate rights and privileges herein granted to [APCO], including (a) the right to cross said land to reach the impounded waters for recreational purposes . . . .

Compl. ¶16.  Since purchasing the property, the Pressls have sought to construct a dock to access the waters of Smith Mountain Lake.  However, APCO has informed the Pressls that it has the ability to control how they use the property below the 800 foot contour level of their property.  Specifically, APCO has advised the Pressls that, as a condition for the building of the dock, they must execute an Occupancy and Use Permit ("Permit").[1]   Compl. ¶ 19 (Permit attached as Compl. Ex. G).  Due to this demand and its obligations, the Pressls filed this action seeking declaratory relief.

## II. LEGAL STANDARD

### a. MOTION TO REMAND

Pursuant to 28 U.S.C. § 1447(c), a case must be remanded "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction."  Federal courts are courts of limited jurisdiction, possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Generally, a case

---

[1] The terms of this Permit state that it is a revocable license which APCO may revoke for any act which violates a condition imposed by APCO.  Compl. ¶ 31-32.

– 4 –

can be originally filed in a federal district court if there is federal question jurisdiction under 28 U.S.C. § 1331 or diversity of citizenship jurisdiction under 28 U.S.C. § 1332.

"Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc. v. Vornado Air Circulation Sys.,* 535 U.S. 826, 830 (2002). More specifically, federal jurisdiction exists only when a federal question is presented "on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987). An action "arises under" federal law if "federal law creates the cause of action" or "the vindication of a right under state law necessarily turned on some construction of federal law." *Merrell Dow Pharm. Inc. v. Thompson,* 478 U.S. 804, 808–09 (1986).

However, the well-pleaded complaint rule is modified when, as in this case, a party is seeking declaratory relief. For these situations, the court must consider "whether the complaint alleges a claim arising under federal law that the declaratory judgment defendant could affirmatively bring against the declaratory judgment plaintiff." *Columbia Gas Transmission Corp. v. Drain,* 237 F.3d 366, 370 (4th Cir. 2001); *see also Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 19 (1983) ("Federal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question."); *Interstate Petroleum Corp. v. Morgan*, 249 F.3d 215, 226–227 (2001) (en banc) (Wilkins, Williams, Motz, and Traxler, JJ., dissenting) ("[F]ederal right actually litigated when declaratory relief is sought may belong to the declaratory judgment defendant rather than to the declaratory judgment plaintiff does not change the fact that the action arises under federal law.").

– 5 –

In addition, the Supreme Court has recognized situations where a "substantial federal question" is presented through four elements. *Gunn v. Minton*, __ U.S. __, 133 S.Ct. 1059, 1065 (2013) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 314 (2005)). In these situations, the federal issue must be: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Id.; see also Washington Consulting Grp., Inc., v. Raytheon Technical Servs. Co., L.L.C.,* 760 F. Supp 2d 94, 100 (D.D.C. 2011) (recognizing the *Grable* decision as a narrow exception to the well-pleaded complaint); *Nielsen v. Archidiocese of Denver*, 413 F. Supp. 2d 1181, 1184 (D. Colo. 2006) (noting that *Grable* did not abrogate the well-pleaded complaint rule).

### b. Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim: "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted). A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly,* 550 U.S. at 555, with all allegations in the complaint taken as true and all reasonable inferences drawn in the

– 6 –

plaintiff's favor. *Chao v. Rivendell Woods, Inc.,* 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

Relevant here, a motion to dismiss may be proper if a party has failed to exhaust its administrative remedies before bringing its lawsuit. Parties who challenge agency action are required to exhaust all administrative remedies before bringing a case to court. *See Cavalier Tel., LLC v. Va. Elec. & Power Co.,* (4th Cir. 2002) ("It is a 'long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'") (quoting *Myers v. Bethlehem Shipbuilding Corp*., 303 U.S. 41, 50–51 (1938)). When determining whether exhaustion occurs, courts look to Congressional intent and the role Congress has assigned to the relevant federal agency. *Id.* In this situation, the FPA establishes a series of remedies for those who wish to challenge a FERC action or decision. Under the FPA, any person may petition FERC with a complaint about a FERC licensee. 16 U.S.C. § 825e. FERC may then investigate these complaints in such a manner and by such a means as it shall find proper. *Id.* In addition to this independent investigation, a party may intervene in a FERC proceeding if they file a timely motion and demonstrate that they have an interest which may be directly affected by the outcome of the proceeding or that their participation is in the public interest. 18 C.F.R. § 385.214. A person aggrieved by a *final* FERC decision or order can file for a rehearing by FERC within thirty days of the date of issuance of the order. 18 C.F.R. § 385.713; 16 U.S.C. §825l(a). Only then, after FERC's final decision and unsuccessful rehearing, can a person seek judicial review

of a FERC action. This judicial review, however, must be sought in a United States Court of Appeals. 16 U.S.C. § 825l(b).

### III. DISCUSSION

#### a. MOTION TO REMAND

The Pressls argue that the complaint should be remanded for lack of subject matter jurisdiction. The Pressls contend that:

> There is absolutely nothing on the face of the Pressls' Complaint that present an issue of federal question. The face of the Complaint makes no reference to the FPA, Defendant's FERC license, or the SMP. Likewise, the aforementioned are not referenced in or incorporated into the flowage easement. The Complaint, and all of its request for relief, refer to and are brought under the state-law theory of easement interpretation.

Mot. to Remand p. 8. In essence, the Pressls argue that the complaint, under the well-pleaded complaint rule, lacks federal question jurisdiction due to the fact that it does not mention or discuss anything dealing with FERC or the SMP. However, this argument fails.

While the well-pleaded complaint rule determines whether a federal question exists, this rule is modified in declaratory judgment proceedings. In such proceedings, the Fourth Circuit has made clear that the court should consider the coercive suit that the declaratory judgment defendant could bring against the declaratory judgment plaintiff. *Columbia Gas Transmission Corp. v. Drain,* 237 F.3d 366, 370 (4th Cir. 2001). In the present case, the "coercive suit" would occur if the Pressls had decided, rather than bringing suit, to build the dock as they desired without a permit from APCO. Then, APCO could have brought its "coercive action" seeking an injunction against the building of the dock. This "coercive suit" contemplated by APCO resembles the numerous other disputes between APCO and Smith Mountain Lake landowners that federal courts have decided with proper jurisdiction under 16 U.S.C. § 825p.[2] *See, e.g.*,

---

[2] At the hearing, the Pressls contend that this court lacks jurisdiction by looking solely at the current declaratory action. However, this is incorrect. As the case law makes clear, the proper analysis hinges on the mirror image

– 8 –

*Nissen et al. v. Appalachian Power*, 6-14-CV-000048 (W.D. Va. Feb 2, 2015) (concerning the same factual dispute). More specifically, APCO operates it hydroelectric project pursuant to a license from FERC under the Federal Powers Act ("FPA"), in accordance with 16 U.S.C. § 817. In providing this license, FERC delegated to APCO its FPA-related duties and responsibilities with respect to operation of the Project, which incorporated the SMP. Furthermore, the FERC license, specifically the operation of the Project, provide a limitation on the broad grant of authority given in the original easement. *McCarthy Holding L.L.C. v. Burgher*, 716 S.E.2d 461, 464–65 (recognizing that a broad grant in an easement is limited to the original purpose of that grant). Consequently, APCO's "coercive suit" "would seek to enforce the duties and responsibilities that it has under the FPA, which include a duty to ensure that lands within the Project boundary comply with the SMP." *Id.* at 7. This enforcement would "fall[] within the exclusive jurisdiction of the District Courts of the United States," as numerous cases between APCO and Smith Mountain Lake landowners have held. *Id.*; *see also Appalachian Power Co. v. Arthur*, No. 7:09-CV-360, 2014 WL 3900618, at *1 (W.D. Va. Aug. 11, 2014); *VA Timberline, LLC v. Appalachian Power Co.*, No. 7:06-CV-40026, 2008 WL 269544, at *1 (W.D. Va. Jan. 29, 2008) *aff'd sub nom. VA Timberline, L.L.C. v. Appalachian Power Co.*, 343 F. App'x 915 (4th Cir. 2009); *Appalachian Power Co. v. Longenecker*, No. 7:00-CV-00731 (W.D. Va. 2001); *J.W. Holdings, Inc. v. Appalachian Power Co.*, No. 6:04-CV-00033, at 2–3 (W.D. Va. 2005).

In addition to jurisdiction under 16 U.S.C. § 825p, this case would also satisfy the *Grable* and *Gunn* requirements for a "substantial federal question." *See, e.g.*, *Va. Timberline, LLC v. Appalachian Power Co.*, No. 7:06-CV-40026, 2006 WL 1993557, at *2 ("The meaning of the FERC license is a substantial and important issue of federal law that sensibly belongs in federal

---

"coercive suit" that APCO, as the declaratory judgment defendant, could bring against the Pressls, as the declaratory judgment plaintiffs. This suit would be identical to the *Nissen* case decided earlier this year.

court.") (citing *Grable,* 545 U.S. at 314). Under this doctrine, federal jurisdiction exists over a claim arising under state law if such claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 314 (2005). More recently, the Supreme Court has stated:

> That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Where all four of these requirements are met, we held, jurisdiction is proper because there is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum," which can be vindicated without disrupting Congress's intended division of labor between state and federal courts

*Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013). As for the necessarily raised requirement, the Pressls would be required to prove that under the Flowage Easement they have the "privilege to use the land . . . in a particular manner and for a particular purpose[]." *Brown v. Haley,* 355 S.E.2d 563, 567 (1987). Therefore, the Pressls would be required to prove that it would not be contrary to APCO's right under the Flowage Easement for them to conduct the activities that they seek.[3] One of these rights given to APCO is to "affect so much of said premises . . . continuously or from time to time in any manner whatsoever as the result of . . . operation and/or maintenance of the aforesaid dam and/or power station." Compl. ¶9.[4] In order to effectuate whether the Pressls' activities are inconsistent with APCO's operation of the dam or power station, the Court would have to consider what is required of APCO to operate the Project. Specifically, pursuant to the FPA, APCO must operate its "dam and hydro electric power

---

[3] The Flowage Right and Easement Deed makes clear that the Pressls have the right to possess and use their property subject to the grant of the easement. Compl. ¶16.

[4] In addition, Plaintiffs specifically seek declaratory relief that they "be allowed to use their property in any manner not inconsistent with the maintenance of a dam and hydro electric power generation plant operated by APCO at Smith Mountain." Compl., pp. 18–19.

– 10 –

generation plant" in accordance with the terms of the FERC license. *See e.g.*, Compl. ¶¶ 6, 14, 15, 16, 17. The Court would also be required to consider the FERC license when determining whether APCO "lacks authority to require the plaintiffs to enter into a revocable license agreement [the Permit] as a condition for accessing the waters of Smith Mountain Lake for recreational purposes," as the Permit's authority and limitation comes from the FERC license. Compl. p. 17. Therefore, in order to rule on the Pressls' request for declaratory relief, the terms of the FERC issues license would be necessary to the resolution of the case and these licenses "are interpreted under federal law." *Timberline*, 2006 WL 1993557, at *2 (citing *United States v. So. Cal. Edison Co.*, 413 F. Supp. 2d 1101, 1124 n.13 (E.D. Cal. 2006).

The second requirement provides that the federal issue in the case be "actually disputed." In order for any court to take jurisdiction over a declaratory judgment action, an actual dispute must exist between the declaratory judgment plaintiff and declaratory judgment defendant. 28 U.S.C. § 2201; *see also Evers v. Dwyer*, 358 U.S. 202, 203 (1958) ("[F]ederal courts will not grant declaratory relief in instances where the record does not disclose an actual controversy.").[5] The Pressls' complaint recognizes this requirement stating that "there exists a dispute between the parties regarding . . . the rights which the defendant has to regulate the plaintiffs' use of their property." Compl. ¶ 36. Thus, APCO's ability to regulate certain activities within the Project boundary is clearly in dispute in this case and this dispute raises a federal issue, as discussed above, because the Court must interpret the FERC orders in resolving this dispute and interpreting the Flowage Right and Easement Deed.

The third requirement requires the federal issue in the case to be substantial. "The substantiality inquiry under *Grable* looks [] to the importance of the issue to the federal system as a whole." *Gunn*, 133 S.Ct. at 1066. Defendant's license from FERC is sanctioned under the

---

[5] This principle also holds true under Virginia law. *See* Va. Code §8.01–184.

– 11 –

FPA, "a complete scheme of national regulation, promot[ing] the comprehensive development of the water resources of the Nation." *Albany Engineering Corp., v. Federal Energy Regulatory Commission,* 548 F.3d 1071, 1075 (D.C. Cir. 2008) (citing *First Iowa Hydro-Electric Coop. v. Federal Power Commission*, 328 U.S. 152, 180 (1946)). Specifically, FERC's goal is to administer a uniform oversight of its licensees operating hydroelectric projects. *Id.* Therefore, the federal issue in this case is substantial, in order to ensure that FERC's Congressionally mandated purpose under the FPA is not diverted and the FERC orders under the project remain consistent and uniform. *See Battle v. Seibels Bruce Ins. Co.,* 288 F.3d 596, 607–08 (4th Cir. 2002) (concluding that state law claims against an insurer who issued a flood insurance policy pursuant to National Flood Insurance Program involved a substantial federal question and were properly removed to district court because policy was governed by FEMA's flood insurance regulations); *Timberline,* 2006 WL 1993557, at *2 ("The meaning of the FERC license is substantial and important issue of federal law that sensibly belongs in a federal court."); *see also Grable*, 545 U.S. at 314. The Federal Government has an "obvious concern in maintaining control over [the] engineering, economic, and financial soundness" of water power resource projects licenses by FERC. *First Ia. Hydro-Elec. Co-Op.,* 328 U.S. at 172. Therefore, "[t]he Government . . . has a direct interest in the availability of a federal forum to vindicate its own administrative action" in connection to these FERC license given to the Defendant. *Timberline*, 2006 WL 1993557, at *2 (citing *Grable*, 545 U.S. at 314).

The fourth and final requirement states that the federal issue arising from state law claims must be "capable of resolution in federal court without disrupting the federal state balance approved by Congress." *Gunn*, 133 S.Ct. at 1065. In this case, "[f]ederal jurisdiction to resolve genuine disagreements over the terms of FERC licenses (like that exercised to resolve

– 12 –

disagreement over federal tax law in *Grable*) . . . will portend only a microscopic effect on the federal-state division of labor." *Timberline*, 2006 WL 1993557, at *2 (citing *Grable*, 545 U.S. at 314). Therefore, I find that this action should not be remanded to the state court, as this court has proper jurisdiction to decide these claims.

### b. MOTION TO DISMISS

#### 1. APCO's easement rights provide it with the authority to request the Pressls to obtain a Occupancy and Use Permit

The Pressls' major contention is that APCO does not possess the legal right to require them to enter into a revocable Permit[6] before they commence the building of their dock.[7] This argument basically asks me to declare that the Flowage Easement does not grant APCO with sufficient property rights to compel the Pressls to obtain a permit prior to building their dock.[8]

The rules controlling the interpretation of an easement granted by deed are the same as those that govern the construction of other written documents. *Pyramid Development, L.L.C. v. D & J Associates*, 553 S.E.2d 725, 728 (Va. 2001). The terms of the easement "are to be construed by giving the words their natural and ordinary meaning," and "[t]he language in the deed is taken most strongly against the grantor and most favorably to the grantee." *Bailey v.*

---

[6] Compl. Ex. G.

[7] To the extent that request for relief "G" is tied to the Permit, it also can be dismissed as illustrated below. However, if APCO is requesting that the Pressls plant vegetation outside of a requirement for the Permit, that requirement is not within the scope of the easement. The easement does not allow APCO to require an affirmative duty on the landowner to act. In that case, APCO could plant the proper vegetation on its own. However, this issue is not justiciable at this time due to the fact that the Pressls' allege that they have attempted to comply with APCO's request, therefore making it moot.

[8] APCO contends that the Pressls are collaterally attacking a prior order issued by FERC concerning the Pressls' predecessor in title, Richard Frie. Presumably, when Mr. Frie failed to comply with certain conditions, FERC denied the application for a variance and request to build a dock. Furthermore, the permit issued to Mr. Frie has since been revoked by APCO, and his appeal to the Fourth Circuit was dismissed as moot when Mr. Frie was divested of ownership through a foreclosure proceeding. Defs.' Mem. of Law p.6, n. 16; Pl's Mem. of Law p. 14; *see also Frie v. Fed. Energy Regulatory Comm'n,* Case No. 11-1331, Dkt. No. 31 (4th Cir. 2011).

– 13 –

*Town of Saltville*, 691 S.E.2d 491, 494 (Va. 2010). Determining the nature of an interest in land conveyed by deed is a question of law. *Id.*

With this background, the Pressls' position is at odds with the plain language of the Flowage Easement. The instrument grants APCO:

> [T]he right to enter upon said premises at any time and from time to time and, at [APCO's] discretion, to cut, burn and/or remove therefrom any and all buildings, structures, improvements, trees, bushes, driftwood and other objects and debris of any and every kind or description which are or may hereafter be located on the portion of said premises below the contour the elevation [sic] of which is 800 feet.

Compl. ¶ 16. This language vests APCO with the ability to remove structures located below 800 FMSL at any time for any reason.[9]

While this broad grant allows the removal of structures, such as a dock, at APCO's discretion, it logically would hold that it also provides APCO with the ability to determine the necessary steps that a party must take to build a dock to begin with. *See, e.g., Posadas de Puerto Rico Associates v. Tourism Co. of Puerto Rico*, 478 U.S. 328, 345-46 (1986) (accepting the principle that the greater power includes the lesser power); *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 763 (1988) (same). For example, without the Permit, APCO legally has the right to come onto the Pressls' land and tear down their dock at the exact moment the first structure[10] has been erected. This could continuously occur over and over again until either the APCO seeks an injunction or the Pressls gives up on the endeavor. In order to prevent

---

[9] Although there is no language in the instrument limiting this grant, Virginia case law makes clear that this easement is limited by a reasonableness inquiry based on what the original purpose of the grant: in this case, the original purpose of the Project and FERC license. *McCarthy Holding L.L.C. v. Burgher*, 716 S.E.2d 461, 464–65 (Va. 2011) (quoting *Shooting Point, L.L.C. v, Wescoat*, 576 S.E. 2d 497, 502–03 (Va. 2003)). However, APCO's ability to control the construction of the dock and vegetation surrounding the Project is the same purpose as the original easement grant, to run the hydro electric dam, and nothing suggests that APCO is expanding this purpose, found in the FERC license, to burden Plaintiffs. *Id.* If the Plaintiffs believe that an expansion has occurred, they can complain to FERC.

[10] This is assuming that the structure violates APCO's FERC obligation under the Project as discussed in the previous footnote. In this case, the Pressls' proposed dock would be contrary to the Project.

– 14 –

this long and expensive standoff, APCO has provided a mechanism, the Permit, to allow the Pressls to ensure that it builds the dock in accordance with APCO's FERC obligations. This Permit ultimately saves both sides' time and money to ensure a dock is correctly built with the necessary conditions and no structure has to be removed at a later date.

Therefore, APCO's right to require the Pressls to obtain a Permit before the commencement of their dock is logically tied to the APCO's ability to remove at the moment that the first structure has been erected.

### 2. *The Pressls failed to exhaust administrative remedies provided by FERC*

Because the Pressls failed to obtain the Permit to build the dock, they did not exhaust their administrative remedies before bringing this lawsuit. *See Cavalier Tel., L.L.C. v. Va. Elec. & Power Co.,* 303 F.3d 316, 322 (4th Cir. 2002) ("It is a long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted" (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51 (1938))).

In this case, the Pressls were not satisfied with the Permit requirement, so they brought this action. Instead, the Pressls should have sought the remedies set forth under the FPA. Under the FPA, the Pressls could petition FERC with a complaint about APCO, the FERC licensee. 16 U.S.C. § 825e. In this complaint to FERC, the Pressls could question any condition under the Permit and whether APCO can require these conditions. After submitting this complaint, FERC may then investigate the Pressls' allegations. 16 U.S.C. § 825e. At that time, the Pressls may intervene in the FERC proceeding. 18 C.F.R. § 385.214. If at the end of the investigation the Pressls are still aggravated, they may file for a rehearing by FERC within thirty days. 18 C.F.R. § 385.713; 16 U.S.C. § 825l(a). Only after this initial determination and rehearing has been

– 15 –

completed, the Pressls can seek judicial review. However, this review would come before the United States Court of Appeals, not this court. 16 U.S.C. § 825l(a).

Accordingly, because the Court finds that the Pressls have failed to exhaust its administrative remedies as required by the FPA, the Court **GRANTS** APCO's Motion to Dismiss for failure to state a claim upon which relief can be granted.[11]

### IV. CONCLUSION

As set forth above, Plaintiffs' motion to remand is **DENIED** and Defendant's motion to dismiss is **GRANTED**.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 6th day of October, 2015

*[signature]*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[11] Because the Court finds this ground to be proper for dismissal, it is unnecessary to reach APCO's other grounds for dismissal. However, the other grounds are also viable grounds for dismissal. For example, APCO claims that the Pressls' request for Declaratory Relief in Paragraph C. and D.(listed above) should be dismissed for failure to state a justicable controversy. More specifically, APCO suggests that C. and D. are based on a "proposed" permit rather than one that had been formally entered by the parties. Until this permit is formally agreed upon, the parties are not in any justiciable controversy.

Finally, APCO claims that the Pressls' request for Declaratory Relief in Paragraph E., F., H., and I. should be dismissed because they ask the Court to find that APCO has no authority to keep them, the Pressls, from building, constructing, or improving a dock or other structures meant for recreational purposes on or in front of their property. With this issue being resolved in *Arthur* and *Nissen*, I could dispose of this argument by properly taking judicial notice of prior decisions and outcomes. *Massey v. Ojanit*, 759 F.3d 343, 347 (4th Cir. 2014) (noting that a court "need not accept allegations that contradict matters properly subject to judicial notice").

– 16 –